2002 WY 1

**Michael Joseph MEEK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–321.

Supreme Court of Wyoming.

Jan. 9, 2002.

Rehearing Denied Feb. 5, 2002.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Assistant Appellate Counsel, Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Michael Meek was convicted on two counts of possessing a controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031 (LEXIS 1999). He appeals contending an NCIC report was an inadequate basis for a reasonable suspicion to allow an investigatory stop and consequently the subsequent search of his vehicle was unlawful, he was not appropriately advised of his *Miranda* rights, and the trial court improperly allowed the information to be amended on the day of trial to allege he possessed cocaine instead of methamphetamine. We affirm.

## ISSUES

[¶ 2] Mr. Meek presents these issues for our review:

I. Did the trial court err in failing to suppress evidence based on the illegal stop of the vehicle Appellant was driving, and obtained in violation of Appellant's state and federal constitutional rights?

II. Did the trial court err in failing to suppress evidence based on the failure to provide *Miranda* warnings to Appellant?

III. Did the trial court err in allowing an amendment of the information the morning of trial?

The state phrases the issues as:

I. Did the trial court correctly find that the investigatory stop, and subsequent search, of the vehicle Appellant was driving were lawful?

II. Did the trial court correctly find that Appellant received appropriate *Miranda* warnings?

III. Did the trial court correctly find that Appellant was not prejudiced by an amendment of the information immediately before his trial?

## FACTS

[¶ 3] On September 16, 1999, Chris Walsh, a sergeant with the Casper Police Department, drove into the parking lot of a Casper convenience store and observed Mr. Meek simultaneously drive in, exit his vehicle, and walk toward the store.[1] Sergeant Walsh concluded Mr. Meek was acting suspiciously when he "very obviously became nervous at my presence [and] jerked his head away to look away from me and then walked into the store." Sergeant Walsh also went into the store but could not see Mr. Meek. After about five minutes, the officer returned to his vehicle and ran an NCIC check on the license plate of the vehicle Mr. Meek was driving. The report revealed the vehicle was stolen. Sergeant Walsh called for back up assistance, drove down the street, pulled over, and waited for Mr. Meek to reappear. Sergeant Walsh stopped Mr. Meek as he drove out of the parking lot. He ordered Mr. Meek and the passenger, Karen Schlitt, out of the vehicle and obtained their identifications. A check of Mr. Meek's driver's license revealed it was suspended. He was subsequently arrested for driving under a suspended license and placed in the back seat of a patrol vehicle that had arrived on the scene. During the stop, Sergeant Walsh was informed that the owner of the vehicle had indicated he would not press charges if Ms. Schlitt, his spouse, was with the vehicle. Immediately after the arrest, Sergeant Walsh searched the vehicle and found a jacket in the back seat which contained a black bag in its sleeve. The officer observed drug paraphernalia in the black bag which included plastic bags with white powder residue, syringes, and a spoon. As Sergeant Walsh removed the items from the bag, Ms. Schlitt stated, "the drugs aren't mine."

[¶ 4] Mr. Meek was then transported to the Casper Police Department. According to Sergeant Walsh's testimony, at the police department a second police officer, Officer Ritter, gave Mr. Meek a verbal warning of his *Miranda* rights. A third police officer, Officer Cutrell, from the street drug unit was then called to assist in Mr. Meek's interview. Upon Officer Cutrell's arrival, he was told Mr. Meek had received a verbal *Miranda*

warning. However, it was his practice to also use a written *Miranda* waiver which Mr. Meek read and signed. Mr. Meek testified at the suppression hearing that he was given *Miranda* warnings only once, in written form. After waiving his right to remain silent, Mr. Meek agreed to speak to the officers. In the course of the interview, Mr. Meek admitted the drugs were his and told the officers where he had obtained them. Officer Cutrell asked Mr. Meek what the laboratory report would likely reveal about the substance on the paraphernalia, and he responded, "methamphetamine and possibly cocaine." Mr. Meek was charged with one count of possessing methamphetamine and one count of possessing marijuana, both in violation of § 35-7-1031. Pursuant to § 35-7-1031(c)(i), he was subject to an enhanced penalty on both counts as a result of previous offenses. He pleaded not guilty to both counts.

[¶ 5] Mr. Meek filed a motion to suppress the statements he made to the police alleging he was not provided adequate warnings under the standards set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He made an additional motion to suppress all evidence obtained from the search and seizure of his vehicle alleging there was a lack of probable cause or reasonable suspicion to justify the stop and the search exceeded the allowed scope. Pursuant to W.R.Cr.P. 11(e)(6), Mr. Meek also filed a motion to suppress all statements he made contending they were made in the course of plea discussions. The trial court held a hearing on the motions which included testimony from the officers and Mr. Meek. After considering the evidence, the trial court denied the motions.

[¶ 6] Mr. Meek waived a jury trial, and a trial to the court was held on July 17, 2000. On the morning of the first day of trial, on the basis of the laboratory report, the state filed a motion to amend the information to specify the controlled substance Mr. Meek was charged with possessing was cocaine instead of methamphetamine. The state argued it did not change the circumstances of

---

1. For purposes of a complete recitation of the facts, we have relied upon the testimony provided in both the hearing on Mr. Meek's motion to suppress and the bench trial.

the alleged crime or the penalty and Mr. Meek was aware of the possibility of the existence of cocaine and had so informed the officers upon his arrest. Mr. Meek's counsel objected and claimed his client was prejudiced by the late amendment. The trial court concluded there was no prejudice because the laboratory report had been provided to the defense in advance and the new allegation would not substantially affect Mr. Meek's rights. Mr. Meek did not testify at trial. He was found guilty on both counts and sentenced on each count to not less than eighteen months nor more than forty-eight months with the terms to be served consecutively. Mr. Meek now appeals.

## DISCUSSION

### A. Investigatory Stop

[¶ 7] First, Mr. Meek argues Sergeant Walsh lacked the necessary reasonable suspicion to stop his vehicle and, therefore, the evidence seized during the search of his vehicle should be suppressed. He challenges the validity of the investigatory stop under the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution.[2]

[¶ 8] Our standard of review is as follows:

When we review a district court's ruling on a motion to suppress evidence, we do not interfere with the findings of fact unless they are clearly erroneous. When the district court has not made specific findings of fact, we will uphold its general ruling if the ruling is supportable by any reasonable view of the evidence. We consider the evidence in the light most favorable to the district court's ruling because of the district court's ability to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions" at the hearing on the motion. The constitutionality of a particular search or seizure is, however, a question of law which we review *de novo.*

*Frederick v. State,* 981 P.2d 494, 497 (Wyo. 1999) (citations omitted) (quoting *Gehnert v. State,* 956 P.2d 359, 361 (Wyo.1998)); *see also Buckles v. State,* 998 P.2d 927, 930 (Wyo. 2000).

[¶ 9] The state concedes this was an investigatory stop; therefore, our analysis centers on whether the stop was lawful. An investigatory stop represents a seizure which invokes Fourth Amendment safeguards but is less intrusive than an arrest. *Wilson v. State,* 874 P.2d 215, 220 (Wyo.1994). The Fourth Amendment to the United State Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The protection of the Fourth Amendment is applied to state action under the due process clause of the Fourteenth Amendment." *Wilson,* 874 P.2d at 219. We have previously said an investigatory stop "requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." 874 P.2d at 220; *see also Buckles,* 998 P.2d at 930. "The validity of such a stop depends on whether, in light of the totality of the circumstances, an officer possessed sufficient information to create such a reasonable suspicion." *Frederick,* 981 P.2d at 497. Mr. Meek argues the required reasonable suspicion must exist before an NCIC check is

2. Mr. Meek fails to provide an independent state analysis based on the Wyoming Constitution, nor does he argue he is afforded greater protection under our state constitution. "The issue of whether this Court should consider an independent interpretation of the Wyoming Constitution's search and seizure provision was answered affirmatively with instructions that a litigant must provide a precise, analytically sound approach when advancing an argument to independently interpret the state constitution." *Vasquez v. State,* 990 P.2d 476, 484 (Wyo.1999). "The failure to present proper citation of authority and argument supporting 'adequate and independent state grounds,' prevents this court, as a matter of policy, from considering other than the federal constitutional principles at issue." *Wilson v. State,* 874 P.2d 215, 219 (Wyo.1994) (quoting *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

initiated. The state asserts reasonable suspicion is not required to do an NCIC check but an officer may rely upon information obtained as a result of the check to create a reasonable suspicion.

[¶ 10] Mr. Meek requests this court consider the ruling in *Wilson*, 874 P.2d 215. In that case, an officer detained the defendant while he waited for the results from an NCIC check, and we said, "a seizure to conduct a computerized identification check without reasonable suspicion is not permitted." 874 P.2d at 222. The United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 19 n. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), recognized, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." In contrast to *Wilson*, the officer in the instant case did not conduct a limited seizure or impose any restriction on Mr. Meek's freedom to leave while waiting for the NCIC check to be completed. It was after he received a stolen vehicle report that the officer initiated the investigatory stop and a seizure occurred.

[¶ 11] In *State v. Grimes*, 1999 MT 145, 295 Mont. 22, 982 P.2d 1037 (Mont.1999), a police officer observed a vehicle traveling with a small child standing up unrestrained on the front seat and, for that reason, requested an NCIC check which resulted in the arrest of the occupants. The Montana Supreme Court held that, under the circumstances in that case, the NCIC report alone properly served as a particularized suspicion which justified the investigatory stop. *Grimes*, ¶ 17. In the same vein, we fail to see how requesting an NCIC check alone could implicate Mr. Meek's constitutional rights. Once the officer received information that the vehicle Mr. Meek was driving was stolen, he had a reasonable suspicion grounded in specific and articulable facts to believe the occupants of the vehicle had committed a crime.

[¶ 12] Mr. Meek also contends the evidence should have been suppressed because the information contained in the NCIC report was false and the vehicle was not in fact stolen. As previously explained, Sergeant Walsh testified that the NCIC report indicated the vehicle was stolen. Thereafter, the owner of the car indicated he would not insist on prosecution if his spouse was with the vehicle. "The validity of such a stop depends on whether, in light of the totality of the circumstances, an officer possessed sufficient information to create such a reasonable suspicion." *Frederick*, 981 P.2d at 497; *see also Buckles*, 998 P.2d at 930. The officer was justified in relying upon the NCIC report communicated to him by law enforcement. The fact that the owner of the vehicle did not subsequently insist on prosecution does not diminish the validity of the information the officer possessed at the time of the investigatory stop to create a reasonable suspicion. In light of the totality of the circumstances, we conclude the investigatory stop was lawful and the motion to suppress the evidence subsequently seized incident to Mr. Meek's arrest was properly denied.

## B. *Miranda* Warnings

[¶ 13] Mr. Meek maintains the trial court erred when it failed to suppress statements he made post-arrest because they were obtained in violation of his *Miranda* rights. "To comply with *Miranda*, law enforcement must advise an accused of his rights before any of the accused's statements, made during custodial interrogation, can be used against the accused at trial." *Mitchell v. State*, 982 P.2d 717, 720 (Wyo. 1999). Failure to comply with these procedural safeguards requires the court to suppress such statements. *Id.* We review the entire record to determine whether the trial court could conclude, given the totality of the circumstances, that the police sufficiently followed *Miranda*. *Id.* "Denial of a motion to suppress is reviewed under an abuse of discretion standard." *Kolb v. State*, 930 P.2d 1238, 1242 (Wyo.1996). "Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous." *Vasquez*, 990 P.2d at 490. The trial court has the opportunity to hear the evidence, assess the witnesses' credibility, and make the necessary inferences, deductions, and conclusions therefrom. Therefore, the evidence is viewed in the light most favorable to the trial court's determination. *Id.*

[¶ 14] Mr. Meek was clearly in custody when he made the incriminating statements. He contends that he was not advised of his *Miranda* rights until he signed a written waiver at the police department and he made statements prior to that time. Essentially, this argument centers on a determination of Mr. Meek's credibility versus the testifying officers' credibility. Sergeant Walsh testified he was present while Officer Ritter verbally advised Mr. Meek of his *Miranda* rights prior to Mr. Meek making any incriminating statements and Mr. Meek stated he understood his rights and agreed to speak to the officers.[3] The trial court found:

> [T]he statements offered that were incriminatory were given at the Casper Police Department. They surely did constitute custodial interrogation, but it would appear to me that the evidence of the officers indicated there was an oral advisement of the *Miranda* warnings and also a written advisement of the *Miranda* warnings … the warnings were, in fact, given … and with that advisement [Mr. Meek] knowingly and voluntarily waived those rights and chose to speak to the law enforcement officers….

Viewing the evidence in the light most favorable to the trial court's determination, we defer to its conclusion that the officers were more credible. The trial court properly denied Mr. Meek's suppression motion in light of the officers' testimony that *Miranda* warnings were provided twice—an initial verbal warning followed by a written waiver.

## C. Amendment of the Information

[¶ 15] On the day of trial, the state filed a motion to amend the information pursuant to W.R.Cr.P. 3(e). The motion sought to change the original information which, in part, charged Mr. Meek with possessing methamphetamine in violation of § 35–7–1031. The motion to amend the information reflected that laboratory test results prompted the state to conform the information to the evidence and charge Mr. Meek with possessing cocaine rather than methamphetamine. The amendment was made consistent with the provisions of W.R.Cr.P. 3(e), which provides:

> (e) *Amendment of information or citation.*—Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:
>
> (1) With the defendant's consent, at any time before sentencing.
>
> (2) Whether or not the defendant consents:
>
> (A) At any time before trial if substantial rights of the defendant are not prejudiced.
>
> (B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The trial court granted the state's motion over Mr. Meek's objection. Mr. Meek complains this violated his right to prepare a defense.

[¶ 16] This court has said:

> [A]n information may not be amended if it prejudices the defendant or charges a different offense. The prohibition against charging additional or different offenses implicates the defendant's right to know the charges against him and to prepare a defense to those charges, which is protected by U.S. Const. amend. VI, and Wyo. Const. art. 1, § 10.

*McInturff v. State*, 808 P.2d 190, 193 (Wyo. 1991). The Sixth Amendment to the United States Constitution states in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation." Similarly, Article 1, Section 10 of the Wyoming Constitution provides in pertinent part: "In all criminal prosecutions the accused

---

3. This court has previously recognized that credibility determinations between defendants and police officers could be avoided if tape recorders were routinely used in interviews. "[T]ape-recorded interviews do leave far fewer loose ends to be tied up and in many, if not most, instances would be a well-advised protocol to follow." *Lara v. State*, 2001 WY 53, ¶ 13, 25 P.3d 507, ¶ 13 (Wyo.2001).

shall have the right ... to demand the nature and cause of the accusation."

[¶ 17] We do express great concern as to why the state waited until the morning of trial to amend the information if, as Mr. Meek suggests, it had the laboratory results for a significant period of time preceding trial. Such a delay does not comport with the principles of fairness essential to our judicial system and can only be attributed to carelessness. However, we do not find error in the amendment of the information.

[¶ 18] First, no additional or different offense was charged by virtue of the amendment; rather, the amendment simply charged Mr. Meek with possessing a different controlled substance. In *People v. Garcia,* 240 Cal.App.2d 9, 49 Cal.Rptr. 146, 147 (1966), the defendant was indicted for selling heroin. A chemist established the substance was marijuana, and, over the defendant's objection, the indictment was thereafter amended to reflect such evidence. The California District Court of Appeal addressed whether the amendment charged a different offense:

> Although an indictment cannot be amended so as to change the offense charged (§ 1009, Pen.Code) both sections 11501 and 11531 make the sale of a narcotic a crime, and for the purpose of pleading, violation of either section is the offense charged; specification of the particular narcotic allegedly sold merely describes the manner in which the law was violated. While this is an essential of an information or indictment, an amendment which substitutes "heroin" for "marijuana," ... does not charge a different offense, within the meaning of section 1009. Clearly, there is authority to amend an indictment if the ·proof of the defendant's acts would be the same under either pleading, as in the present case.

49 Cal.Rptr. at 147. Furthermore, in *United States v. Knuckles,* 581 F.2d 305, 310 (2d Cir.1978), an issue arose at trial as to whether the controlled substance charged was heroin or cocaine. The trial court permitted the jury to convict the defendants on either count if it was convinced beyond a reasonable doubt that the controlled substance involved was either substance. The defendants were convicted, and on appeal they claimed this was an impermissible amendment of the information. The court responded:

> Further, the *only* variance alleged by the [defendants] is the exact nature of the substance involved, heroin or cocaine; the time, place, people, and object proved at trial are in all respects those alleged in Count Two of the indictment. Whether the substance was cocaine or heroin makes no difference under 21 U.S.C. § 841, the statute cited in Count Two of the indictment. Such a variance, affecting neither the Government's case nor the sentence imposed, cannot have prejudiced the ability of the defendants to make their defense to the charge that they violated 21 U.S.C. § 841.

581 F.2d at 311 (footnote omitted). Similarly, the amendment in this case did not result in a different potential sentence. In fact, Mr. Meek had been convicted of possessing a controlled substance on three or more separate occasions; therefore, he automatically became subject to a prison term of not more than five years regardless of whether he was charged with possessing methamphetamine or with possessing cocaine.

[¶ 19] Mr. Meek next argues he suffered prejudice because his counsel was prepared to defend against a charge of possessing methamphetamine and not cocaine. However, Mr. Meek admitted he possessed the paraphernalia on which the controlled substance was found. When Officer Cutrell asked what the laboratory tests would reveal about the controlled substance on the seized paraphernalia, Mr. Meek responded, "methamphetamine and possibly cocaine," demonstrating he knew of the potential existence of cocaine. Whether his counsel was to defend against a charge of possessing methamphetamine or a charge of possessing cocaine, the available defenses were equally applicable to both controlled substances. Likewise, the same events were involved. Clearly, he was not prejudiced. We further note that Mr. Meek's counsel did not seek a continuance and cannot now be heard to complain that counsel was ill prepared to defend the case. Under these circumstances, and in the ab-

sence of prejudice, the court did not err in permitting the information to be amended.

[¶ 20]   Affirmed.